The second case for argument is Thomas Styczinski, et al. v. Grace Arnold. All right, Mr. Cardall, we'll hear from you. May it please the Court, my name is Eric Cardall, representing the appellants. This is an appeal from a post-remand decision based on a purported misapplication of Minnesota Statute 645.20, severability analysis. Before I read the one sentence, this is a very long sentence, I want to focus on what I want to talk about today, and that is the word provision in the statute, the word law in the statute, and the two tests, interconnectedness and standing alone. So I'll just quickly read the one sentence. What are you reading from? 645.20. From the statute. Yeah. So I just want to, I'll just, I'll cut little parts out of that. So the first one is, if any... We love it when you read to us, so we'll listen carefully. Go ahead. Okay. If any provision of a law is found to be unconstitutional and void, so that's really important. And then when we get to the unless provision, then it says, unless the court finds the valid provisions of the law are so essentially and separately connected, and then it goes on. But again, it goes back to provisions of the law. And then after the second unless, unless the court finds the remaining valid provisions, standing alone, are incomplete or incapable of being executed in accordance with the legislative intent. So the point of reading those provisions is that provision in law end up being pretty important to understanding how that statute's supposed to work in Minnesota. So... Counsel, let me ask you about that, because I think that is one of the most unusual aspects of this case. I used to practice quite a bit of state constitutional law, and in my jurisdiction, I would never ask a state court or any other court to rewrite a statute in this way. But it's my understanding that the Minnesota Supreme Court allows that sort of thing. And I realize severability is a question of state law, but can a Federal court even sitting in a diversity jurisdiction rewrite a statute? No, because the Court is limited. As I mentioned at the end of our reply brief, the Federal court cannot serve as a counsel of revision, revising any laws. It's limited by the Constitution. But what about the Minnesota Blue Pencil Authority that they say that we're going to preserve as much of the statute that's constitutional? You're saying the Federal court is without that jurisdiction when they sit by diversity? The... It's interesting on that point. I'm having difficulty communicating, because when we talk about provisions in law, it's so different. So let's begin with... If I may answer the question with something more foundational. Okay. Why don't you just answer the question directly? Right. Okay. Yes. The Court cannot rewrite the law. And it's restricted by 63520 in that way. And the way that it's limited is that the foundation of the statute, the fundamental question is, what is the law? And the law, in this case, is the amendment, the session law that amended the chapter. And so the provision within the law is the provision within the 2022 session law. And that's the only possible way, and we've come across this in answering your question, when we deal with any kind of legal document where the Court interprets intent. For example, here, a legislative act or a will or a contract. When the will, contract, or legislative act is amended, there are two events that need to be evaluated for intent. So in this case, the 2022 session law contains a total of 149 words. 113 words define the phrase ministerial transaction. 36 words integrate the new definition into 80G.01, .02, .03, .04, .05, .06, .07, and .11. And so when we go at 64520, we have to realize that the provision of the law that they're talking about is the 2022 session law. Now, with respect to the law of the case, in the previous decision, it stated in Appendix 2223, a closer look at the definition of ministerial transaction reveals an extraterritorial effect. A ministerial transaction includes a bullion product transaction conducted between a dealer and a consumer who lived in Minnesota. And that refers to the ministerial transaction definition. And so is that the provision of the 2022 session law that's unconstitutional and void for that first part of the sentence that I read at 64520? And I believe that is the case. And so what you have is 113 of 149 words, the provision law, being found invalid. And so the analysis under the interconnected test and the standing alone test are with respect to the remaining 36 words. The remaining 36 words under the interconnected test actually take the Minnesota definition and apply it in those sections I mentioned, .01 through .07, .11. And so for the state to argue that those 36 words would have been, they could presume that they would have been acted without the change to the Minnesota definition, Minnesota transaction definition, I don't think is accurate. Further, those 36 words alone don't make any sense. If you take away the 113-word definition of Minnesota transaction, those 36 words standing alone, the second test, would not have been enacted by the state legislature. So let's go back and look, how did this get passed? This got passed after the appellate briefing was completed in the first Eighth Circuit proceeding. And they were trying to, in a way, fix it. The state legislature was trying to fix it while it was at the Eighth Circuit. I advised them, no, don't do it. Let's just evaluate it as it is. And so when you have 149 words and the law of the case says the 113 words are unconstitutional and void, and the statute says, you know, that's basically the test, then we evaluate those remaining 36 words and find that neither test has been passed. With respect to the other limitations, it seems that on the Court, there was a hesitation by the Court with respect to the definition of dealer representative, which didn't have the restriction on Minnesota transactions. There might have been a mistake by the state legislature, but that's not for us to fix. But the point is, it was done in a hasty way. And in that decision, the Court said, well, I'm not going to interpret that to apply it extraterritorially. However, everywhere else, it was deleted except there. And unfortunately, because it wasn't inserted there, it applies to dealer and dealer registration. And so it goes all the way through the statute. So under the law of the case, the district court severed text does not solve the extraterritoriality problem. What extraterritorial problem is there after national port producers? Why shouldn't we go back and reconsider whether the original statute is permissible? Well, my understanding is the appeal is limited to the post-treatment matters. And so I think that, you know, we have the law of the case. You'd like it to be limited to that because national port producers, doesn't it create a question about the original decision going on Healy? Well, the Healy case wasn't overturned. But it was explained as being limited to an anti-discrimination principle. Right, and the principle of extraterritoriality is a fundamental building block of our Federalist system. These are purely physical economic transactions we're talking about. It's very important that Minnesota not act as if its economic regulations control economic regulations to other states. So I don't think there's any question about the ban on state economic regulations and physical transactions completely out of the state being prohibited in our system. So that's not the issue. If the judges are interested in where does this principle fit, you know, I understand that. But my client's just interested in getting to the right answer. And that is, you know, my client wins. But getting back to this, where do we run off on 645.20? It seems that at the appendix 1011, the district court decision, in the brief at page 17, there's this language that the district court is to almost have a dialogue with the state legislature trying to get to the point of legal compliance. And that gets close to that counselor revision idea that the district court issues an order, the state legislature communicates back through an amendment, then the district court gets to sever it to improve it, and maybe the state legislature adopts the severed text, which it has not here, which is important. It has not adopted the severed text, and it's that time to do that. And so how does that work? Does that comport with our understanding of 645.20 and how it works in Minnesota? Minnesota statute 645.20 is an act which jealously guards the legislative prerogative and limits what the court can do very specifically. And that's why I spent all the time going through what the word provision, the word law means, and what the test regarding interconnectedness and standing alone means. Do you think that the U.S. district court, in this case, could do whatever a Minnesota court could do under 645.20? I think there is an additional limitation jurisdictionally because, as I mentioned at the end of my reply brief, it wasn't completely briefed. This is not a counselor revision. You know, I get that you made that argument. The question is really, and I've asked it, and I'll just, Chief Judge Kalten's asked it. The question is, do you agree that a United States district court sitting with diversity jurisdiction has the full power and authority that a Minnesota district court would have? And the answer is no. And the question is, why? And my answer is that the federal courts were not granted that power under the federal constitution to rewrite state laws. Well, under diversity jurisdiction, don't we have the same authority that the state court would have? You're saying somehow that there's a state legal principle that prohibits a United States district court from acting in a diversity case. Well, I appreciate the court's intent on getting a straight answer to that question, but I have to deal with the record. The record is that she, the court, the lower court, acted as a counselor revision and rewrote the statute as if it was a dialogue with the state legislature. If that's going to be approved by this federal court, that's a much different system than we've had in the federal system. So I'm addressing what the district court did. But the real question is, is that if you're sitting as a district judge and you strike parts of the statute as constitutional, as unconstitutional, and you're a Minnesota district court judge, at that point, you apply the statute to say, and you do an analysis, would this statute still stand because of the severability provision in Minnesota law as interpreted by the Minnesota Supreme Court, right? And you're saying somehow the U.S. district court can't do that piece of it. And so the U.S. district court's only option is then to certify that question to the Minnesota Supreme Court. I've been through this before, and this is premised on this statute. And if this statute's going to be read that courts can rewrite the laws, then there's a restriction on the federal court. But you'd be making the same argument in a Minnesota court about the statute, right? You don't think this authorizes a Minnesota district court to do it either. I'll accept that. I'll save the rest of my time for that. Thank you. You may reserve the rest of your time. Thank you. Mr. Barr, we'll hear from you. Thank you. You may proceed. May it please the Court, my name is Alan Cook Barr. I'm an assistant attorney general for the state of Minnesota. I represent Appellee Minnesota Commissioner of Grace Arlen in this matter. The Court should affirm the severance ordered by the district court and reject the coin dealer's extreme proposal to invalidate the entire chapter, an entire chapter of Minnesota state law, because the coin dealers have not met their heavy burden for doing so. As severed, Chapter 80G is not facially extraterritorial, and the severance that the district court did is consistent with state law. I'd like to begin with the questions posed by the Court with respect to what the district court could or could not do. As a matter of Minnesota state law, the district court could sever the statute in the way that it did, by striking specific provisions to narrow the scope of the statute to avoid extraterritorial effect. Counsel, isn't that because the, well, the dealers are looking at the words of the statute, at the word provision, but the Minnesota Supreme Court has interpreted that very, very broadly? That's correct, Your Honor. If you look at State v. Melchert-Dinkel, which we cite in our brief, if you look at Associated Builders and Contractors v. Ventura, if you look at BAC v. State, it's three Minnesota state court cases where the Court either did strike specific provisions as opposed to an entire statute, or even an entire subdivision. They struck individual words, I believe, in Melchert-Dinkel, or the Court at least considered it, and then weighing the factors in 645.20, decided not to in that specific case. But it is an option under State law, and that's what the district court properly did in this case. Thank you, counsel. So given that situation, it seems that the dealer's argument that the district court failed in its task of severing all of the extraterritorial provisions, I think that's accurate. I think they did leave some. Is there some way to still save the statute by applying the presumption under Minnesota law against extraterritorial application? I think that's also exactly right, Your Honor. Both under Minnesota State law as well as under Federal constitutional law, there is a presumption against extraterritoriality, and that can be applied here to the remainder of the statute. But it does put us in kind of a strange situation, because the case is back on remand, and they seem to have failed to get rid of all of the offending provisions. Two points to that, Your Honor. First, with respect to whether or not they got rid of all the — the district court got rid of all the offending provisions. The district court did get rid of all provisions that were facially extraterritorial, and I think that distinction is important here. The coin dealers are not asking for this statute to not be applied in specific situations. They want the statute to be inapplicable in all cases as a facial challenge. There may be instances, and I disagree with this, but I'll get to this in a moment. There may be instances where there are applications that would be extraterritorial. But unless the coin dealers can establish that the statute would be extraterritorial in all applications, then the remedy is not to strike down the statute. The remedy is to wait for that as-applied case and for them to make that as-applied challenge on the facts of that case. Second, as to whether or not the district court did, in fact, leave any extraterritorial portions, the one portion that appellants raised in the district court was the last sentence of ADG.02 about dealer representatives. It says a dealer representative may not buy, sell, solicit, market products or investments in products on behalf of a dealer unless the dealer is properly registered with the commission under this section. That properly registered language does important work because earlier in the section, it establishes what proper registration means. Proper registration is registration for Minnesota transactions. And so it's the commissioner's interpretation of that section that that bar on dealer representative behavior is itself limited by when proper registration is required such that it would only apply to Minnesota transactions. And in light of the severance that the district court did, those Minnesota transactions that are subject to the registration requirement. I think there may be one other hurdle yet to be crossed, and that is if we read located in as limited only to when the dealer is transacting physically in Minnesota, that would be changing the meaning of that word from its original context. Can severability change the meaning of a word? I don't think that severability can change the meaning. Your Honor, I do, however, think that located in, read in the context in the entire statute is, at least on its face, limited to Minnesota. I should also note the coin dealers did not raise that argument below when we proposed the severance. They, in fact, explicitly when they were asked by the district court judge, does the commissioner's severance solve extraterritoriality issues, their response was yes, except for the definition of dealer representatives. They waived that argument explicitly, even if it was a meritorious argument. I'd like to address the focus of opposing counsel's argument with respect to whether or not the severance complied with 645.20. That statute presumes State laws are severable unless one of two exceptions applies. The first that opposing counsel focused on is whether or not it is consistent with legislative intent. Here the legislative intent is clearly to protect Minnesotans as much as legally possible. The legislature in enacting 80G.01 subdivision 5A was responding to the district court's order. It was trying to get the statute to be not extraterritorial. The fact that it did not go far enough and still had some extraterritorial applications, as we discovered when we came up to this Court and this Court said, yes, this statute's still a problem, does not mean the legislature would prefer that consumers be entirely unprotected as compared to protected in a way that is not extraterritorial. Opposing counsel's argument that the legislature somehow doubled down on extraterritoriality by adding this definition inverts the question. When the legislature was deciding this statute, it did not have the benefit of this Court's analysis from the first Nijinsky decision. If it had that, I think it's safe to say based on the legislative record, the legislature would have taken that into account and, as was stated then, tried to follow the Court's order. That's what was going on, and that's what the legislature would prefer in this case. Unless the Court has further questions, I'm happy to yield the remainder of my time. I just want to make clear that on the national pork producers issue, as I understand it, in the district court, the state did not seek to rely on pork producers to question the original. No, Your Honor. If you look at page 375 through 376 of pork producers, I think although it is perhaps in light of this Court's prior decision, I don't think that it alters the result. I'm sorry. All right. You're willing to, I think you've answered the question. Thank you. Thank you for your argument. We'll hear a brief rebuttal. Thank you, Your Honor. As I mentioned, the statute language is very important, so we'll go back to the first test. I'll read it. Unless the Court finds the valid provisions law are so essentially and inseparably connected with and so dependent upon the void provisions that the Court cannot presume the legislature would have enacted the remaining valid provisions without the void one. So, as I said, the void provision is the definition of Minnesota transaction. That's 113 of the 149 words, leaving 36 words to analyze. So, would the legislature have enacted the remaining 36 words? I say not, because they're so interconnected. They connect the definition of Minnesota transaction to .01 through .07 and .11 of Chapter 80G. So, if we read that sentence, and I, of course, explain that in my opening and listen carefully to my friend representing the State, and he didn't address this argument, so maybe provision is understood broadly, but the word law would be the 2022 session law. Because it says here, would have enacted the remaining provision without the void ones. Enacted. So, in 2022, would they have enacted the 36 words? No, because they have the void ones. And the earlier decision, and I read the section of the ACERC decision, under law of the case, invalidated the Minnesota transaction definition. And lastly, in answer to the question with respect to the Federal Court jurisdiction, I could imagine a State law like, okay, the State Constitution assigns to the U.S. District Court the role of counsel of revision for the State legislature. That would violate Article III. Thank you, Your Honor. Very well. Thank you for your argument.